IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| DONALD P.[1], | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | )   Civil Action No. 7:21cv00015 |
| | ) |
| KILOLO KIJAKAZI[2], | ) |
| **Acting Commissioner of Social Security,** | ) |
| | ) |
| | ) |
| **Defendant.** | ) |

## MEMORANDUM OPINION

Plaintiff Donald P. ("Donald") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding him not disabled and therefore ineligible for Disability Insurance Benefits ("DIB") under the Social Security Act ("Act").[3] 42 U.S.C. §§ 401–433. Donald alleges that the Administrative Law Judge ("ALJ") erred by failing to properly evaluate the medical opinion of his treating licensed professional counselor.

I conclude that substantial evidence supports the Commissioner's decision in all respects. Accordingly, I **GRANT** the Commissioner's Motion for Summary Judgment (Dkt. 25) and **DENY** Donald's Motion for Summary Judgment (Dkt. 20).

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence exists to

---

[1] Due to privacy concerns, I use only the first name and last initial of the claimant in social security opinions.

[2] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is hereby substituted for Andrew Saul as the defendant in this case.

[3] This case is before me by consent of the parties pursuant to 28 U.S.C. § 636(c)(1).

support the Commissioner's conclusion that Donald failed to demonstrate that he was disabled under the Act.[4] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations and alterations omitted); see also Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (emphasizing that the standard for substantial evidence "is not high"). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Mastro, 270 F.3d at 176 (quoting Craig v. Chater, 76 F.3d at 589). Nevertheless, the court "must not abdicate [its] traditional functions," and it "cannot escape [its] duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## CLAIM HISTORY

Donald filed for DIB in March 2018, claiming that his disability began on March 28, 2018[5], due to congestive heart failure, cardiomyopathy, enlarged heart, obesity, pacemaker/defibulator. R. 12, 224. Donald's date last insured is December 31, 2019; thus, he

---

[4] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

[5] By letter from counsel, Donald amended his alleged disability onset date from January 22, 2014, to March 28, 2018. R. 12, 219.

must show that his disability began on or before this date and existed for twelve continuous months to receive DIB. R. 12, 76; 42 U.S.C. §§ 423(a)(1)(A), (c)(1)(B), (d)(1)(A); 20 C.F.R. §§ 404.101(a), 404.131(a). The state agency denied Donald's applications at the initial and reconsideration levels of administrative review. R. 76–91, 94–110. On November 20, 2019, ALJ David Lewandowski held a hearing to consider Donald's claim for DIB. R. 32–53. Counsel represented Donald at the hearing, which included testimony from vocational expert Asheley Wells. On March 3, 2020, the ALJ entered his decision analyzing Donald's claims under the familiar five-step process[6] and denying his claim for benefits.[7] R. 12–26.

The ALJ found that Donald was insured at the time of the alleged onset date and that he suffered from the severe impairments of chronic heart failure, non-ischemic myopathy, hypertension, obesity, post-traumatic stress disorder ("PTSD"), depression, and panic disorder. R. 14. The ALJ found moderate limitations in the broad functional areas of understanding, remembering, or applying information, interacting with others, and concentrating, persisting, or maintaining pace, and mild limitations in adapting or managing oneself. R. 15–17. The ALJ determined that Donald's mental and physical impairments, either individually or in combination, did not meet or medically equal a listed impairment. R. 15–16. The ALJ specifically considered listing 4.02 (chronic heart failure), listing 4.04 (ischemic heart disease),

---

[6] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies.  42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

[7] Donald was 47 years old on his amended alleged onset date and 49 years old on his date last insured, as well as the date of the ALJ's opinion, making him a younger person under the Act. R. 25, 76.

listing 4.05 (recurrent arrhythmias), listing 11.04 (vascular insult to the brain), listing 4.00(H)(1) (evaluating hypertension, though it is not a specific listing), listing 12.04 (depressive, bipolar, and related disorders), listing 12.06 (anxiety and obsessive-compulsive disorders), and listing 12.15 (trauma- and stressor-related disorders). The ALJ also considered Donald's obesity as required by SSR 19-2p, including considering it in relation to the other body systems listings. R. 15.

The ALJ concluded that Donald retained the residual functional capacity ("RFC") to perform a limited range of sedentary work. R. 18. Donald can perform only occasional postural activities, can never climb ladders, ropes, or scaffolds, and must avoid concentrated exposure to pulmonary irritants, temperature extremes, humidity, wetness, or industrial hazards. Donald can understand, remember, and carry out simple one to two step instructions and perform simple tasks, with occasional interaction with others, and is expected to be off task 10% of the workday. Id. The ALJ determined that Donald was unable to perform his past relevant work as a tower operator but could perform jobs that exist in significant numbers in the national economy, such as assembler, weight tester, and lens inserter. R. 25–26. Thus, the ALJ determined that Donald was not disabled. R. 25–26. Donald appealed the ALJ's decision, and the Appeals Council denied his request for review on November 9, 2020. R. 1–3.

## ANALYSIS

Donald alleges that the ALJ failed to properly weigh the opinion of his treating medical provider, Amanda Selman, LPC.

**A. Medical History Overview**

1. Medical Treatment

Donald has a history of congestive heart failure and non-ischemic cardiomyopathy and had an Implantable Cardioverter-Defibrillator implanted in June 2014, about four years prior to his alleged onset date. R. 296. At a follow-up appointment in March 2018, shortly after his alleged onset date, his doctor indicated that from a "cardiac standpoint he remains asymptomatic" though his weight was increasing. R. 345. Donald had several cardiology follow-ups throughout the relevant period, and in October 2019, shortly before his date last insured, was found to be "doing well overall" at an appointment to establish care with a new primary care doctor, who also noted his history of hypertension, depression, PTSD, and hyperlipidemia. R. 487.

In March 2018, Donald began counseling sessions with Amanda Selman, LPC, complaining of racing thoughts and increased anxiety due to "extreme changes" in his life, including a divorce, heart health issues, and aging parents. R. 340–41. His counselor diagnosed generalized anxiety disorder and PTSD. R. 341. At a follow-up visit in May 2018, he reported a behavior change of not wanting to go out in public, for fear of seeing people who might ask him about his health situation, instead preferring to stay at home with his family. R. 338. At subsequent appointments in 2018 and 2019, Donald had complaints of increasing anxiety and sleep disturbance, as well as issues with memory and focus. R. 353. On mental status exams, Donald generally showed cooperative behavior, normal orientation, and, for his first few sessions, appropriate affect, which changed to anxious affect in later counseling sessions. R. 338, 340, 469, 470, 472.

2. Medical Opinions

In October, state agency psychologist Leslie Montgomery, Ph.D. reviewed the record and

found mild limitations in interacting with others and adapting or managing oneself, and no limitations in understanding, remembering, or applying information, and concentrating, persisting, or maintaining pace. R. 23. The ALJ found this opinion not persuasive, indicating that the record supports moderate limitations in the functional areas of interacting with others, understanding, remembering, or applying information, and concentrating, persisting, or maintaining pace.

On reconsideration, state agency psychologist Joseph Leizer, Ph.D., reviewed the record and found no limitation in understanding, remembering, or applying information, mild limitation in adapting or managing himself, and moderate limitations in concentrating, persisting, or maintaining pace, and interacting with others, and concluded Donald was capable of maintaining concentration, persistence, and pace on tasks with one to two step instructions that require only occasional contact with others. R. 107. The ALJ found this opinion generally persuasive. R. 23.

Ms. Selman, Donald's counselor, wrote as follows in a treatment note dated March 28, 2018:

> Four years ago, Donald contracted a viral infection that attacked his heart. Donald now only has 35 percent working muscle in his heart. Due to his medical issues, Donald can no longer work his job that he worked at for almost 30 years. Donald was known for his physical strength and being able to handle any issues at his job.

R. 340. The ALJ highlighted that whether this statement reflected the opinion of Ms. Selman, or simply Donald's report, was unclear; however, the ALJ concluded, if it was Ms. Selman's opinion, he found it not persuasive. R. 20. Ms. Selman also completed a Medical Source Statement of Ability to Do Work Related Activities (Mental), dated October 23, 2019. R. 484–86. Ms. Selman noted moderate, marked, or extreme limitations in Donald's ability to understand, remember, and carry out instructions, and marked limitations in his ability to interact

appropriately with supervisors, coworkers, and the public, as well as cope with changes in a work setting. Id. The ALJ also found this opinion not persuasive. R. 20.

Steven Goldstein, Ph.D., completed a Physical Capacities Evaluation in October 2019, finding Donald capable of sitting for eight hours, standing for three hours, and walking for one hour in an eight-hour day, as well as frequently lifting and carrying up to 20 pounds, with other postural and environmental limitations. R. 481–83. The ALJ did not find this opinion persuasive. R. 21.[8] Diane Winiarski, M.Ed., provided an Occupational Skills Assessment in May 2019, indicating that no occupations were available at the sedentary to light physical demand level for Donald, using a wage of $27.51 an hour. R. 464. The ALJ found Ms. Winiarski's opinion "not persuasive" noting that determining whether there are available positions at a specific wage amount "is not a consideration in determining disability for Social Security purposes." R. 22.

### B. Opinion Evidence of Ms. Selman

Donald argues that the ALJ erred in his consideration of Ms. Selman's opinion, which found moderate to extreme limitations in his ability to understand, remember, and carry out instructions, and marked limitations in his ability to interact appropriately with supervisors, coworkers, and the public, as well as respond to changes in a routine work setting. The Commissioner counters that the ALJ followed the regulations, and his assessment of Ms. Selman's opinion is supported by substantial evidence.

Donald submitted his application in March 2018, thus 20 C.F.R. §§ 404.1520c governs how the ALJ considered the medical opinions.[9] When making an RFC assessment, the ALJ must

---

[8] The ALJ also discussed medical opinions from Dr. Goldstein and Robert Bryg, M.D., dated June 20, 2016 and January 8, 2017, respectively, both prior to the alleged onset date. Dr. Goldstein thought that Donald was disabled as of January 2014, while Dr. Bryg thought Donald capable of a limited range of light or sedentary work, and the ALJ did not find either opinion persuasive. R. 21.

[9] 20 C.F.R. §§ 401.1520c, 416.920c applies to claims filed on or after March 27, 2017. For claims filed before this date, the rules in § 404.1527 apply.

assess every medical opinion received in evidence. The regulations provide, however, that the ALJ "will not defer or give any specific evidentiary weight, including controlling weight" to any medical opinions or prior administrative medical findings, including those from the claimants' medical sources. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). The most important factors in evaluating the persuasiveness of these medical opinions and prior administrative medical findings are supportability and consistency, and the ALJ will explain how he considered these two factors in his decision. Id. "Supportability" means "[t]he extent to which a medical source's opinion is supported by relevant objective medical evidence and the source's supporting explanation." Revisions to Rules, 82 Fed. Reg. at 5853; see also 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). "Consistency" denotes "the extent to which the opinion is consistent with the evidence from other medical sources and nonmedical sources in the claim." Revisions to Rules, 82 Fed. Reg. at 5853; see also 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). The ALJ is not required to explain the consideration of the other three factors, including relationship with the claimant, specialization, and other factors such as an understanding of the disability program's policies and evidentiary requirements. Id.[10]

Here, the ALJ properly considered Ms. Selman's opinions under the new regulations. The ALJ discussed each of her opinions and provided specific reasons why he did not find them persuasive. As a preliminary matter, Donald's argument that the ALJ improperly found Ms. Selman's was not a "medical provider" and her opinion was "outside of her field of practice," references the wrong opinion. Pl.'s Br. at 8, Dkt. 20. While Donald points to the opinion dated

---

[10] An exception to this is that when the ALJ finds that two or more "medical opinions or prior administrative medical findings about the same issue are both equally well–supported [] and consistent with the record [] but are not exactly the same," the ALJ will explain how he considered the other most persuasive factors including: the medical source's relationship with the claimant, specialization, and other factors that tend to support or contradict a medical opinion. 20 C.F.R. §§ 404.1520c(b)(3).

October 23, 2019, the ALJ is actually discussing Ms. Selman's opinion dated March 28, 2018. R. 20. Contrary to Donald's argument, the ALJ never states that Ms. Selman is not a "sufficient medical source"; instead, the ALJ notes that Ms. Selman is a mental health provider and does not treat Donald's physical impairments. This is a legitimate reason to discount Ms. Selman's March 28, 2018, opinion that Donald could not do the physical requirements of either his prior job, or a sedentary job, due his "inability to sit or stand for long periods of time without experiencing problems with breathing." Pl.'s Br. at 12, Dkt. 20; R. 340; See 20 C.F.R. § 404.1520c(c)(3)(iii) (indicating that the purpose for treatment you receive from a medical source may help demonstrate the level of knowledge the medical source has of your impairments). The ALJ expresses this as follows:

> Ms. Selman is not a medical provider, but a mental health professional and did not treat [Donald's] physical impairments. Her opinion is outside of her field of practice.

R. 20. Beyond discounting on these grounds, the ALJ also cites to conflicting record evidence showing that Donald is capable of sedentary work, including unremarkable physical examinations, clear lungs with no wheezes, regular heart rate and rhythm, and a note from his actual cardiac doctor, also dated in March 2018, indicating that "from a "cardiac standpoint he remains asymptomatic." R. 345. The ALJ clearly recognized that Ms. Selman was an acceptable medical source, understood that she was Donald's counselor, and considered her March 2018 opinion properly under the regulations.

The ALJ provided a separate explanation for Ms. Selman's Medical Source Statement of Ability to Do Work-Related Activities (Mental), dated October 23, 2019, that also complies with the regulations. Indeed, the ALJ did more than the regulations require by considering her medical opinions individually.[11] The ALJ determined Ms. Selman's October 23, 2019 opinion was not

---

[11] As the Regulations explain, because of the:

persuasive because it was not consistent with the overall record. In support, the ALJ noted that she generally marked her findings with an "X" instead of making "detailed narrative findings" and that Ms. Selman's own findings on examination were inconsistent with the extreme limitations in her opinion, including multiple examinations where Donald was, "well-groomed, oriented to person, place, and time, with an appropriate and not flat affect, intact insight and judgment, stable mood, and no acute distress."[12] R. 20. Instead, the ALJ explained, the record was consistent with moderate limitations in understanding, remembering, or applying information, concentrating, and interacting with others, with an ability to understand, remember, and carry out simple one to two step instructions, perform simple tasks, and have only occasional interaction with others, as well as certain off task behavior. R. 21. The ALJ's determination was supported by state agency psychologist Joseph Leizer, Ph.D.

Relatedly, Donald argues that the ALJ "failed to acknowledge or discuss [Ms.] Selman's treatment notes" which describe "changes in memory and attention, aggressiveness, anxiety, severe socializing issues, panic attacks, and the need for order." Pl.'s Br. at 15, Dkt. 20. In direct

---

voluminous case records containing many types of evidence from different sources, it is not administratively feasible for us to articulate in each determination or decision how we considered all of the factors for all of the medical opinions and prior administrative medical findings in your case record. Instead, when a medical source provides multiple medical opinion(s) or prior administrative medical finding(s), we will articulate how we considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate. We are not required to articulate how we considered each medical opinion or prior administrative medical finding from one medical source individually.

20 C.F.R. § 404.1520c

[12] Donald complains that the ALJ improperly explained that Ms. Selman's "findings were usually indicated with an 'X' as opposed to detailed narrative findings." Pl.'s Br. At 15, Dkt. 20. However, as Donald acknowledges, an ALJ may give a form opinion less weight than a narrative opinion. Id. Moreover, in the form at issue, the ALJ considered both Ms. Selman's checkbox notations and her narrative explanations. The ALJ acknowledged Ms. Selman's hand-written opinion that his impairment affected his capabilities for socialization, as well as memory and recall, and resulted in physical limitations due to "problems breathing/panic attacks, and a need for order." R. 20, 485. At bottom, the ALJ did not wrongly discount Ms. Selman's opinions based on format alone, but because the record did not support the extreme limitations she imposed. R. 20.

10

contradiction to Donald's claim, the ALJ explicitly discusses Ms. Selman's treatment notes, writing that Donald was being counseled for anxiety and racing thoughts and "reported anxiety in social situations, frustration in community settings, and memory issues" as well as concentration disturbance and word finding difficulty. R. 19–20. In fact, the ALJ discounted the opinion of state agency psychologist Dr. Montgomery, writing that the record supports moderate limitations in the functional areas of in interacting with others, understanding, remembering, or applying information, and concentrating, persisting, or maintaining pace, due to objective findings including sleep disturbances, low energy, anhedonia, concentration disturbance, word finding difficulty, and anxious affect. R. 23.

Also contrary to Donald's argument, the ALJ did not overly rely on his "benign mental status findings" but instead, considered the entire record, including Donald's symptoms and Ms. Selman's reports of his issues with memory loss, attention, history of trauma, socializing, OCD, difficulty breathing, and panic attacks. R. 18–20. The ALJ found that Donald had the severe mental impairments of PTSD, depression, and panic disorder. R. 14. However, the ALJ explained that, while his counseling notes indicate difficulty with word recall and details, he "generally presented as alert and oriented" and reported watching television, reading for pleasure, and performing household activities such as cooking, cleaning, and shopping, which all require some memory and understanding. R. 16. Further, the ALJ acknowledged Donald's PTSD symptoms, and accurately described the tension between his socialization issues and abilities as follows:

> The medical evidence of record shows that [Donald] generally interacted normally with all treating practitioners, though he often reported refraining from interacting in a community setting. He often stated he would go shopping and perform other errands, but attempted to avoid others. [Donald] described good relationships with his children and grandchildren. Though anxious at times, providers generally noted [he] was pleasant,

11

> cooperative, and in no distress [without] serious deficiencies in contact, speech, or conversation.

R. 16. Likewise, the ALJ acknowledged his complaints of concentration issues, and imposed RFC limitations to accommodate Donald, including simple one to two step instructions and tasks, and being off task 10% of the workday. R. 17. Thus, the ALJ relied on much more than Donald's benign mental status examinations to evaluate his disability claim and craft his RFC.

Here, the ALJ adequately explained why he found Ms. Selman's opinions not persuasive, and I will not reweigh the evidence. Additionally, the RFC assessment lies squarely with the ALJ, not with any medical provider or examiner. 20 C.F.R. §§ 404.1546(c), 416.946(c); see Felton-Miller v. Astrue, 459 F. App'x 226, 230-231 (4th Cir. 2011) ("The ALJ was not required to obtain an expert medical opinion as to [the] RFC."). To this end, when conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the Court defers to the ALJ's decision. Shinaberry v. Saul, 952 F.3d 113, 123 (4th Cir. 2020). Accordingly, I conclude that the ALJ's decision is supported by substantial evidence and that Donald is capable of performing work at the level stated in the ALJ's opinion.

## CONCLUSION

For these reasons, an order will be entered **AFFIRMING** the final decision of the Commissioner, **GRANTING** summary judgment to the defendant, **DENYING** plaintiff's motion for summary judgment, and **DISMISSING** this case from the court's docket.

Entered:  June 23, 2022

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge